O

# United States District Court
# Central District of California

| | |
|---|---|
| KRISTI THOMAS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WAYFAIR INC.; WAYFAIR LLC; and DOES 1–50,<br><br>　　　　　Defendants. | Case № 5:19-cv-01196-ODW (GJSx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [18]** |

## I.　INTRODUCTION

Plaintiff Kristi Thomas filed this wrongful termination action against Defendants Wayfair LLC ("Wayfair") and Wayfair Inc., claiming that Defendants terminated her employment in a retaliatory and discriminatory manner. (*See* Decl. of Jessica Kang ISO Defs.' Notice of Removal Ex. 1 ("Compl."), ECF No. 1-3.)

Defendants move for summary judgment on all claims. (Mot. for Summ. J. ("Motion" or "MSJ"), ECF No. 18.) The matter is fully briefed. (*See id.*; Opp'n to MSJ ("Opp'n"), ECF No. 20; Reply ISO MSJ ("Reply"), ECF No. 21.) For the following reasons, Defendants' Motion is **GRANTED**.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Around March 2018, Thomas interviewed at Wayfair for the position of Level 3 Human Resources ("HR") Manager. (Defs.' Separate Statement of Uncontroverted Facts ("DSUF") 1, ECF No. 18-2.) Thomas was interviewed by three Wayfair employees: Amy Strebel (Senior Manager of Talent Management), Genaro Bugarin (Director, Regional Operations), and Candice Smith (Director of Talent Management). (*Id.* 5.) On March 21, 2018, Wayfair offered Thomas the position of HR Manager on the Talent Management ("TM") team. (*Id.* 4.) Thomas accepted the offer and was hired as an at-will employee on April 16, 2018. (*Id.* 8–9.)[2]

During her employment, Thomas worked primarily at Wayfair's location in Perris, California (the "Warehouse"). (DSUF 10.) Strebel was Thomas's supervisor. (*Id.* 13.) Strebel did not work at the Warehouse, but she and Thomas spoke at least once a week in "1 on 1" discussions, and she visited the Warehouse once every few months. (*Id.* 56.) During the 1 on 1s, Thomas updated Strebel on "whatever was going on, and discussed projects, initiatives, and other matters." (*Id.*)

As Thomas's supervisor, Strebel completed performance reviews of Thomas's work. Thomas's first performance review covered the period of time between when she was hired through June 30, 2018 (the "Summer 2018 Review"), and Strebel then rated Thomas's overall performance as "[m]eeting current performance expectations." (Decl. of Alyssa Gjedsted Ex. A ("Thomas Dep.") Ex. 12, ECF No. 18-3.) In her next performance review for the period between July 1, 2018, to December 31, 2018 (the "Winter 2019 Review"), Strebel gave Thomas an overall evaluation of "[i]nconsistent performance." (*Id.* Ex. 13.)

---

[2] Although Thomas named Wayfair Inc. as a Defendant, she was employed solely by Wayfair, not Wayfair Inc. (DSUF 11.) Defendants argue Wayfair Inc. is entitled to summary judgment because Thomas's claims can be asserted only against her former employer, which Wayfair Inc. was not. (MSJ 12–13.) Thomas does not address this issue in her Opposition. (*See generally* Opp'n) In any event, given the Court's disposition of the Motion, the Court need not consider whether Wayfair Inc. could be vicariously liable for Wayfair's conduct and declines to do so.

According to Strebel's declaration testimony, Strebel "recommended the termination of Ms. Thomas'[s] employment on a date prior to January 18, 2019." (Decl. of Amy Strebel ("Strebel Decl.") ¶ 8, ECF No. 18-4.) Strebel also declares she "asked that [Wayfair's] recruiters begin searching for a candidate for the L3 HR Manager role to replace Ms. Thomas . . . as early as approximately October 2018." (*Id.* ¶ 9.)

On January 29, 2019, Smith emailed Strebel and two other Wayfair employees saying, "Kristi Thomas will be exiting on 2/28 or sooner. All of this has not been communicated, so please do not communicate to others on your team." (Decl. of Candice Smith ("Smith Decl.") ¶ 5, Ex. A, ECF No. 18-5; DSUF 70.) That same day, January 29, 2019, "Thomas informed [Strebel] that someone had submitted a complaint of theft by managerial and hourly employees at the Perris location." (Strebel Decl. ¶ 13.)[3] Strebel declares she intended to inform Thomas of her termination during the week of January 29, 2019, but Strebel decided to wait when she realized she needed Thomas to investigate the newly arisen allegations of internal theft. (Strebel Decl. ¶¶ 12–13.)

Thomas was asked to investigate the theft, and based on her investigation, she recommended terminating all employees who were accused (two hourly employees and three managers). (Thomas's Statement of Uncontroverted Facts ("PSUF") 5, ECF No. 20-2; DSUF 73; Opp'n 3–4.) Despite Thomas's recommendation, Wayfair terminated only the hourly employees, not the managers. (DSUF 83.) Thomas was then instructed to end her investigation. (PSUF 9.)

---

[3] Defendants aver that the "allegation of theft at [the Warehouse] arose on January 30, 2019." (DSUF 72.) Thomas claims she "disputes" this fact. (Thomas's Resp. to DSUF 72, ECF No. 20-2.) But neither side cites any evidence to support their positions. The *only* evidence relevant to this issue is Strebel's declaration testimony, in which she declares that she learned of the theft allegations from Thomas on January 29, 2019. (Strebel Decl. ¶ 13.) Thus, the Court relies on the date stated in Strebel's declaration, which stands unrebutted.

On February 4, 2019, after Thomas completed her investigation, Strebel informed Thomas that her employment was being terminated. (DSUF 74.)[4] On February 8, 2019, Strebel completed a "Termination Report" detailing the purported reasons for Thomas's termination. (Strebel Decl. ¶ 7, Ex. C.) The Termination Report identifies thirteen conversations that Strebel purportedly had with Thomas between June 15, 2018, and January 29, 2019, during which Strebel had attempted to address Thomas's "seeming lack of urgency, her response to communications and need to flush out the details, as well as taking ownership for things in CA, and for her failing to critically think through situations." (*Id.*; see DSUF 59.)

Thomas believes she was terminated because she is female and because she recommended the termination of the male managers. (PSUF 10–11.) Accordingly, Thomas filed the present action against Defendants for: (1) wrongful termination in violation of the Fair Employment and Housing Act ("FEHA"), California Government Code section 12940(a); (2) sex discrimination in violation of FEHA section 12940(a); (3) retaliation in violation of FEHA section 12940(h); (4) failure to prevent discrimination in violation of FEHA section 12940(k); and (5) wrongful termination and retaliation under California Labor Code section 1102.5. (*See* Compl.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550

---

[4] Strebel's declaration testimony, upon which Defendants rely for this fact, actually states that Strebel informed Thomas of her termination on February 7, 2019. (*See* Strebel Decl. ¶ 14.) However, because Thomas admits she was informed on February 4, 2019, and because the difference between these dates is ultimately irrelevant, the Court relies on Thomas's admission. (*See* DSUF 74; Thomas's Resp. to DSUF 74.)

U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 322–23. Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to the case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the

'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Thomas's five claims for relief can be categorized three ways. With her first two claims, Thomas alleges she was wrongly terminated (and therefore discriminated against) on the basis of gender because she is female. Her third and fifth claims are based on a theory of retaliation—namely, that she was terminated because she expressed a desire to terminate the managers who were allegedly stealing goods from the Warehouse. Thomas's fourth claim is based on a failure to prevent the conduct underlying her discrimination claims. The Court addresses each category in turn.

### A. Gender Discrimination (Claims 1 and 2)

Thomas brings her first two claims under FEHA section 12940(a), which prohibits, among other things, terminating or discriminating against an employee "because of . . . [their] sex, gender, gender identify, [or] gender expression." Cal. Gov. Code § 12940(a). Specifically, Thomas claims she was fired because she is female. (*See* Compl. ¶¶ 25–43.)

"California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) (citing, among other cases, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." *Id.*

Under the *McDonnell Douglas* test, the plaintiff "bears the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence." *Horne v. Dist. Council 16 Int'l Union of Painters & Allied Trades*, 234 Cal. App. 4th 524, 533 (2015) (citing cases). To establish a prima facie claim for discrimination, a plaintiff must generally show that (1) she was part of a protected class; (2) she was

1 qualified for her position or performing competently in the position she held; (3) she
2 suffered an adverse employment action such as termination; and (4) some other
3 circumstance suggests discriminatory motive. *Guz*, 24 Cal. 4th at 355 (citing cases).
4 "If, at trial, the plaintiff establishes a prima facie case, a presumption of discrimination
5 arises." *Id.* "This presumption, though rebuttable, is legally mandatory." *Id.* (internal
6 quotation marks omitted).

7 Next, an employer can rebut the presumption of discrimination "by producing
8 admissible evidence, sufficient to raise a genuine issue of fact and to justify a
9 judgment for the employer, that its action was taken for a legitimate,
10 nondiscriminatory reason." *Id.* at 355–56 (internal quotation marks and brackets
11 omitted). Upon such a showing by the employer, "the presumption of discrimination
12 disappears." *Id.* at 356.

13 Finally, if an employer rebuts the presumption of discrimination, the plaintiff
14 has an "opportunity to attack the employer's proffered reasons as pretexts for
15 discrimination, or to offer any other evidence of discriminatory motive." *Id.*
16 Sometimes, "evidence of dishonest reasons, considered together with the elements of
17 the prima facie case, may permit a finding of prohibited bias." *Id.* "The ultimate
18 burden of persuasion on the issue of actual discrimination remains with the plaintiff."
19 *Id.*

20 Here, Defendants argue that Thomas cannot establish a prima facie case of
21 discrimination because she did not perform competently in her position, and no
22 circumstances exist to suggest any discriminatory motive for her termination.
23 (MSJ 13–15.) Defendants further argue that even if Thomas establishes a prima facie
24 case for discrimination, they had a legitimate basis for terminating Thomas, and
25 Thomas cannot show that the reason is pretext. (*Id.* 18–20.) Because the Court
26 agrees that Defendants establish a legitimate explanation for terminating Thomas
27 which Thomas fails to dispute, the Court need not consider whether Thomas
28 establishes her prima facie case. Thus, the Court assumes without deciding that

Thomas establishes a prima facie case for discrimination and turns straight to the next stages of the *McDonnell Douglas* analysis.

### 1. Legitimate, Non-Discriminatory Basis for Terminating Thomas

Even assuming Thomas establishes a presumption of discrimination, Defendants may rebut that presumption "by producing admissible evidence, sufficient to raise a genuine issue of fact and to justify a judgment for the employer, that its action was taken for a legitimate, nondiscriminatory reason." *Guz*, 24 Cal. 4th at 355–56 (internal quotation marks and brackets omitted); *accord Horne*, 234 Cal. App. 4th at 533. "While the objective soundness of an employer's proffered reasons [may] support[] their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*." *Guz*, 24 Cal 4th at 358. "'[L]egitimate' reasons . . . in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*." *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981)). In other words, "proffered reasons, if nondiscriminatory on their face and honestly believed by [the] employer, will suffice even if foolish or trivial or baseless." *Id.* (internal quotation marks omitted) (quoting *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997)).

Here, Defendants maintain that Thomas was terminated because Strebel and Smith determined that she "fail[ed] to meet the expectations of her position" as HR Manager. (MSJ 19.) As evidence, Defendants submit:

- notes that Strebel took "contemporaneously with [her] discussions with Ms. Thomas," (Strebel Decl. ¶ 6, Ex. B);
- the Termination Report, which outlines thirteen instances where Strebel purportedly "coached" Thomas about improving her job performance (*id.* ¶ 7, Ex. C);
- emails purportedly reflecting Strebel's search for candidates to replace Thomas, which date back as early as October 2018, (*id.* ¶ 9, Exs. D–F);

- Smith's declaration testimony that "[i]t was [her] opinion, based on [her] interactions with Ms. Thomas, that Ms. Thomas lacked critical thinking skills necessary for the position of HR Manager," (Smith Decl. ¶ 4);
- an email conversation dated August 14, 2018, in which Smith and Strebel privately criticized Thomas's "[c]ritical thinking." (*id.* ¶ 6, Ex. B);
- the Winter 2019 Review, in which Strebel evaluated Thomas's overall performance as "[i]nconsistent," (Thomas Dep. Ex. 13); and
- Thomas's deposition testimony admitting that the only reason she believed her termination was based on gender was that she is female, (Thomas Dep. 233:6–9).

Defendants' proffered evidence sufficiently establishes a legitimate, non-discriminatory basis for terminating Thomas. The Winter 2019 Review and the Termination Report tend to show that Thomas did not meet job performance expectations, and the fact that termination was made on that basis is further corroborated by portions of Strebel's contemporaneous notes, Smith's declaration testimony, and the August 14, 2018 email between Smith and Strebel. Furthermore, the correspondence regarding Defendants' search for new-hire candidates bolsters Strebel's declaration testimony that she already intended to replace Thomas prior to Thomas's investigation of internal theft. (*See* Strebel Decl. ¶ 8.) Based on all of this evidence, the Court finds that Defendants successfully rebut the presumption of discrimination by proffering a legitimate, non-discriminatory basis for Thomas's termination. Thus, the burden shifts back to Thomas to establish that Defendants' reason for her termination is pretext. *Guz*, 24 Cal. 4th at 355.

### 2. *Pretext for Discrimination*

At this stage of the analysis, Thomas has the "opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* at 356. To that end, Thomas offers four weak arguments to suggest that Defendants' purported reason for terminating her is simply

pretext for discrimination. (*See* Opp'n 17–18.) Specifically, Thomas argues that (1) she "met expectations and received praise by Strebel" in the Summer 2018 Review; (2) she was "assigned an extremely important and very serious task" (i.e., the investigation of internal theft), which would not have happened if she was bad at her job; (3) she "has testified that she believes she was terminated because of her gender"; and (4) she "had no write-ups or written warning about her performance during her employment." (*Id.*; PSUF 3.) None of these arguments are persuasive.

First, Strebel's evaluation that Thomas was "[m]eeting current performance expectations" in her Summer 2018 Review does not demonstrate a weakness or implausibility in Defendants' reason for termination because, among other reasons, Thomas subsequently received an evaluation of "[i]nconsistent performance" in her Winter 2019 Review. Indeed, Strebel's declaration testimony states only that she recommended terminating Thomas sometime before January 18, 2019, which is consistent with the timing and contents of the Winter 2019 Review. In light of the Winter 2019 Review, the Summer 2018 Review does not make Defendants' proffered reason for terminating Thomas—that she did not meet expectations in her position—any less plausible.

Second, the fact that Thomas was entrusted to conduct the investigation of internal theft similarly shows no weakness or implausibility in Defendants' proffered legitimate basis for termination. Thomas merely asserts (without support) that "no employer [would] continue to employ a poor performer or continue to give them such important and serious tasks." (Opp'n 18.) Meanwhile, Strebel's declaration testimony states that she intended to inform Thomas of her termination during the week of January 29, 2019, but that she decided to wait when she learned of the theft allegations because she needed someone to investigate the allegations, and she had not yet secured Thomas's replacement. (Strebel Decl. ¶ 13.) Essentially, Thomas contends that no employer would ever do this. The Court fails to see the logic in this

argument, and Thomas offers no evidence to counter Strebel's declaration testimony. Thus, this argument falls short as well.

Third, Thomas reiterates that she *believes* she was terminated because of her gender, and that she testified to having that belief at her deposition. But Thomas cannot point to her own belief of a fact as evidentiary support for proving that fact. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."). Thomas's deposition testimony that she believes she was discriminated against does not help prove that she was, in fact, discriminated against.

Fourth, Thomas asserts that she received "no write-ups or written warning about her performance during her employment." (PSUF 3; *see* Opp'n 17.) She also asserts that she "had no discussion with Strebel about her performance during her employment." (PSUF 4.) To be sure, if these assertions were true, they would likely weaken Defendants' proffered reason for terminating Thomas. But Thomas fails to provide any evidence to support these statements. Thomas cites only to her own deposition testimony in which she testified that she could not "remember" whether Strebel ever "talk[ed]" to her about her job performance. (*See* Add'l Thomas Depo. 220:4–6.) Thus, not only are Thomas's assertions wholly unsupported, they remain directly contradicted by the evidence—e.g., the Winter 2019 Review, the Termination Report, and Strebel's contemporaneous notes all show that Thomas received written and verbal criticisms regarding the quality of her work. (*See* Thomas Depo. Ex. 13; Strebel Decl. Exs. B–C.) With zero support for her conclusory assertions, Thomas fails to raise a genuine dispute as to whether the legitimate explanation established by Defendants is pretext for discrimination.

Ultimately, it seems the essence of Thomas's discrimination claims is that she "more than exceeded her expectations" in her position as HR Manager; thus, the only

explanation for her termination must be gender discrimination. (Opp'n 12.) But Defendants sufficiently disprove the premise of this theory (i.e., that Thomas exceeded job expectations) with undisputed evidence establishing the opposite as a legitimate basis for her termination. Moreover, as Defendants emphatically highlight, Thomas admitted at her deposition that she has no reason believe she was discriminated against on the basis of her gender, aside from the fact that she is female:

> Q. Okay. But again, you weren't subject to derogatory language or conduct or images or that type of thing based on your gender?
>
> A. Correct.
>
> Q. How do you believe Wayfair failed to prevent discrimination and harassment?
>
> A. I don't think I would have been fired if I was a man.
>
> [. . .]
>
> Q. Other than the fact that the three managers were male, is there any reason why you believe that [the decision to not fire the managers] was based on gender?
>
> A. No.
>
> [. . .]
>
> Q. My question is, other than the fact that you are female, is there any reason that you believe the termination of your employment was motivated by your gender?
>
> A. No.

(Thomas Dep. 222:10–17; 232:10–13; 233:6–9.)

Even without considering Defendants' explanation, Thomas's evidence raises, at best, only a weak suspicion that discrimination was a possible basis for her termination. Against that thin suspicion, Defendants present uncontroverted evidence of a plausible explanation that it terminated Thomas for reasons unrelated to gender. *See Guz*, 24 Cal. 4th at 369–70 (holding summary judgment appropriate for defendant on age discrimination claim where plaintiff failed to raise a triable issue that defendant's proffered reasons were pretext). Thomas fails to raise any genuine

dispute of material fact as to Defendants' legitimate basis for her termination. Accordingly, Defendants are entitled to summary judgment with respect to Thomas's first and second claims for discrimination.

**B.     Retaliation (Claims 3 and 5)**

Thomas brings her third claim under FEHA section 12940(h) and her fifth claim under California Labor Code section 1102.5. Both statutes, in essence, prohibit terminating an employee in retaliation for reporting or refusing to participate in unlawful conduct. *See* Cal. Gov. Code § 12940(h); Cal. Labor Code § 1102.5; (*see also* Compl. ¶¶ 44–52, 59–65). In this case, Thomas claims she was unlawfully fired in retaliation for recommending the termination of the three male managers accused of stealing goods from the Warehouse. (*See* Opp'n 13–14.)

Notably, the *McDonnell Douglas* burden-shifting test also applies to retaliation claims. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (citing *Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992)). As explained above, the first stage of the *McDonnell Douglas* analysis looks to whether the plaintiff establishes a prima facie claim, which in the case of retaliation requires the plaintiff to establish: "(1) he or she engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link between the protected activity and the employer's action." *See Akers v. Cnty of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002) (citing cases). Second, "[o]nce an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *Id.* (citing *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 68 (2000)). And third, "[i]f the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture' and the burden shifts back to the employee to prove intentional retaliation." *Id.* (quoting *Morgan*, 88 Cal. App. 4th at 68).

Here, Defendants seek summary judgment on the retaliation claims on several grounds. The Court need not address every argument raised, however, because as

already explained, Defendants have established a legitimate reason for terminating Thomas, which Thomas has utterly failed to rebut. (*See* Parts IV(A)(1)–(2), *supra*.) To be clear, Thomas addresses the issue of pretext *once* in her Opposition, and her arguments as to discrimination and retaliation are indistinguishably melded. (*See* Opp'n 16–19 (arguing simultaneously that "Defendants did not have a legitimate, non-discriminatory and non-retaliatory reason for terminating Thomas").) In other words, the Court has already explained why Thomas fails to raise any genuine dispute as to Defendants' explanation for her termination. And Defendants' explanation (namely, that Thomas did not meet the expectations of her position) is as non-retaliatory as it is non-discriminatory. Accordingly, Defendants are also entitled to summary judgment on Thomas's third and fifth claims for retaliation. *See Guz*, 24 Cal. 4th at 369–70.

### C. Failure to Prevent Discrimination (Claim 4)

Lastly, Thomas brings her fourth claim under FEHA section 12940(k), which makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov. Code § 12940(k). Significantly, "[t]here cannot be a claim for failure to take reasonable steps necessary to prevent sex discrimination under section 12940, subdivision (k) if actionable sex discrimination has not been found." *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1318 (2015). In light of the Court's disposition on Thomas's other claims, Defendants are entitled to summary judgment on Thomas's fourth claim as well.

## V. CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment (ECF No. 18) is **GRANTED**. The Court shall issue Judgment.

**IT IS SO ORDERED.**

January 21, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**